**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38008**

| | |
|---|---|
| STATE OF IDAHO, | 2012 Unpublished Opinion No. 306S |
| Plaintiff-Respondent, | Filed: May 4, 2012 |
| v. | Stephen W. Kenyon, Clerk |
| GREGORY KLUNDT, | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Defendant-Appellant. | |
| | SUBSTITUTE OPINION THE COURT'S PRIOR OPINION DATED JANUARY 4, 2012, IS HEREBY WITHDRAWN |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Fred M. Gibler, District Judge.

Judgment of conviction for conspiracy to traffic in methamphetamine by manufacture; trafficking in methamphetamine by manufacture; and possession of a controlled substance, pseudoephedrine, with intent to manufacture methamphetamine, affirmed.

Molly J. Huskey, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

MELANSON, Judge

Gregory Klundt appeals from his judgment of conviction for conspiracy to traffic in methamphetamine by manufacture; trafficking in methamphetamine by manufacture; and possession of a controlled substance, pseudoephedrine, with intent to manufacture methamphetamine. Specifically, Klundt argues that a fatal variance occurred between the information alleging conspiracy to commit the crime of trafficking in methamphetamine by manufacture and the jury instructions given at his trial. Klundt also contends that he was

1

subjected to multiple convictions and punishments for the same offense under the Double Jeopardy Clause. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Following a report of concerns that Klundt and his girlfriend, Marjory Ann Barnes,[1] were manufacturing methamphetamine in their shared residence, law enforcement obtained a warrant to search their house. The search revealed a number of items associated with the manufacture of methamphetamine. The state charged Klundt with conspiracy to traffic in methamphetamine by manufacture, I.C. §§ 37-2732B(a)(3) and 18-204; trafficking in methamphetamine by manufacture, I.C. §§ 37-2732B(a)(3) and 18-204; and possession of a controlled substance, pseudoephedrine, with intent to manufacture methamphetamine, I.C. § 37-2732(a)(1)(A). After trial, a jury found Klundt guilty. Klundt was sentenced to concurrent determinate terms of five years for each count. Klundt appeals.[2]

## II.

## ANALYSIS

### A.     Variance

Klundt argues there was a fatal variance between the information charging him with conspiracy to traffic in methamphetamine by manufacture and the elements jury instruction given on the charge at trial. The information, as it pertained to Klundt, stated:

> That the Defendant, Gregory Ray Klundt, beginning on or about January, 2009, and ending September, 2009, in the County of Kootenai, State of Idaho, did unlawfully, wilfully and knowingly conspire and/or agree with Marjory Barnes to commit the crime of trafficking in methamphetamine by manufacture, in violation of I.C. § 37-2732B(a)(3)
>
> OVERT ACTS
> In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed within Kootenai County:
> . . . .

---

[1]     Barnes was also charged with the same crimes. The district court joined Barnes's and Klundt's cases for trial. However, the cases were not consolidated on appeal.

[2]     Klundt was also found guilty of manufacture of a controlled substance where a child is present, I.C. § 37-2737A, and was sentenced to a consecutive indeterminate three-year term. However, he does not challenge this judgment of conviction or sentence on appeal.

2

2.    On or about January 30, 2009, Gregory Klundt purchased pseudoephedrine from Shopko with the intent to manufacture methamphetamine.

. . . .

4.    On or about February 21, 2009, Gregory Klundt purchased pseudoephedrine from Albertsons with the intent to manufacture methamphetamine.

. . . .

6.    On or about March 4, 2009, Gregory Klundt purchased pseudoephedrine from Walgreens with the intent to manufacture methamphetamine.

7.    On or about March 7, 2009, Gregory Klundt purchased pseudoephedrine from [Albertsons] with the intent to manufacture methamphetamine.

8.    On or about March 19, 2009, Gregory Klundt purchased pseudoephedrine from Walgreens with the intent to manufacture methamphetamine.

9.    On or about April 1, 2009, Gregory Klundt purchased pseudoephedrine from Walgreens with the intent to manufacture methamphetamine.

. . . .

11.    On or about April 16, 2009, Gregory Klundt purchased pseudoephedrine in from Shopko with the intent to manufacture methamphetamine.

At trial, the district court provided two jury instructions regarding the charge of conspiracy to traffic in methamphetamine by manufacture. Instruction 10 stated that Klundt was charged with conspiracy to traffic in methamphetamine and then restated, verbatim, the overt acts contained in the information. Instruction 31 laid out the elements of the crime of conspiracy to traffic in methamphetamine by manufacture:

> In order for the defendant to be guilty . . . the state must prove each of the following:
> 1.    beginning on or about January, 2009, and ending September, 2009;
> 2.    in the State of Idaho
> 3.    the defendant, GREGORY RAY KLUNDT and Marjory [Ann] Barnes agreed;
> 4.    to commit the crime of trafficking in methamphetamine by manufacturing;
> 5.    the defendant intended that the crime would be committed;
> 6.    one of the parties to the agreement performed *at least one overt act*;
> 7.    such act was done for the purpose of carrying out the agreement.

(Emphasis added.)

3

Klundt argues the district court's elements instruction did not limit the state in its attempt to prove conspiracy to traffic in methamphetamine by manufacture to relying only on the acts described in the information. Klundt contends the jury was erroneously instructed that it could find him guilty of the charge based on *any* overt act shown at trial which would have proven a conspiracy. Klundt asserts that this variance was fatal given that testimony at trial demonstrated Barnes asked her daughter to purchase cold medicine which contained pseudoephedrine; the residence in which Klundt lived contained agents, such as solvents and matchbooks with the striker plates removed, used to make methamphetamine; and Barnes purchased iodine nine minutes after Klundt purchased cold medicine containing pseudoephedrine. Klundt reasons that he was not given notice of the possibility of having to defend against these scenarios at trial because they were not listed in the information.

Klundt did not object to the alleged variance in the court below. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court clarified the definitions it had previously utilized to describe what may constitute fundamental error, including those regarding jury instructions which were not objected to at trial. The *Perry* Court held that when a jury reached its verdict based on erroneous instructions an appellate court must generally vacate and remand the decision of the lower court. *Id*. at 228, 245 P.3d at 980. However, in the limited instance where the jury received proper instruction on all but one element of an offense, and where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless. *Id*. If a rational jury could have found that the state failed to prove the omitted element then the appellate court must vacate and remand. *Id*.

The existence of an impermissible variance between a charging instrument and the jury instructions is a question of law over which we exercise free review. *State v. Sherrod*, 131 Idaho 56, 57, 951 P.2d 1283, 1284 (Ct. App. 1998). Our task in resolving the issue presented is two-

fold. First, we must determine whether there is a variance between the information used to charge Klundt with conspiracy to traffic in methamphetamine by manufacture and the instructions presented to the jury. *See State v. Brazil*, 136 Idaho 327, 329, 33 P.3d 218, 220 (Ct. App. 2001). Second, if a variance exists, we must examine whether it rises to the level of prejudicial error requiring reversal of the conviction. *Id.* A charging instrument meets the basic functions of the pleading requirement if it fairly informs the defendant of the charges against which he or she must defend and enables him or her to plead an acquittal or conviction in bar of future prosecutions for the same offense. *United States v. Bailey*, 444 U.S. 394, 395 (1980). A variance is fatal if it amounts to a constructive amendment. *State v. Jones*, 140 Idaho 41, 49, 89 P.3d 881, 889 (Ct. App. 2003). A constructive amendment occurs if a variance alters the charging document to the extent that the defendant is tried for a crime of a greater degree or a different nature. *Id.* In sum, a variance between a charging instrument and a jury instruction necessitates reversal only when it deprives the defendant of the right to fair notice or leaves him or her open to the risk of double jeopardy. *State v. Windsor*, 110 Idaho 410, 417-18, 716 P.2d 1182, 1189-90 (1985); *Brazil*, 136 Idaho at 330, 33 P.3d at 221. A review of whether the defendant was deprived of his or her right to fair notice requires the court to determine whether the record suggests the possibility that the defendant was misled or embarrassed in the preparation or presentation of his or her defense. *Brazil*, 136 Idaho at 330, 33 P.3d at 221.

When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993). We consider, therefore, whether Instruction 10 and Instruction 31, taken together, created a variance from the information. Although Instruction 31 uses broader language regarding overt acts than the information, it must be read in conjunction with the overt acts listed in Instruction 10. The overt acts listed in Instruction 10 mirror the acts listed in the information. It would be needlessly redundant to require that the overt acts listed in Instruction 10 be listed again in Instruction 31. We presume that the jury followed the district court's instructions. *See State v. Kilby,* 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996). Therefore, we assume that the jury applied the overt acts laid out in Instruction 10 when determining whether Klundt was guilty of conspiracy to traffic in methamphetamine by manufacture. Accordingly, there was

5

no variance between the information used to charge Klundt with conspiracy to traffic in methamphetamine by manufacture and the instructions presented to the jury.

Even if a variance existed, the error was harmless because we conclude beyond a reasonable doubt that the overt act elements listed in the information were uncontested and supported by overwhelming evidence at trial. The state presented substantial evidence at trial proving the specific acts alleged in the information. Several pharmacists and pharmacy technicians testified they were required to keep a log of customers who purchase cold medication containing pseudoephedrine. The logs were admitted into evidence. The logs demonstrated that Klundt bought cold medication containing pseudoephedrine on the dates and at the places listed in the information. Thus, a rational jury could have found that the state proved these acts at trial. In addition, Klundt did not argue at trial that he did not purchase pseudoephedrine. Rather, he defended against the charges by implying he bought the cold medication for a legal purpose. Thus, Klundt was not deprived of his right to fair notice and was not misled or embarrassed in the preparation of his defense. Therefore, we hold that, even if we assumed there was a variance, the error was harmless.

## B.    Double Jeopardy

Klundt argues that he was subjected to multiple convictions and punishments in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article 1, Section 13 of the Idaho Constitution because possession of a controlled substance, pseudoephedrine, with intent to manufacture methamphetamine, I.C. § 37-2732(a)(1)(A), is a lesser included offense of trafficking in methamphetamine by manufacture. I.C. §§ 37-2732B(a)(3), 18-204. Klundt did not, however, raise the issue of double jeopardy in the court below.

Generally, issues not raised below may not be considered for the first time on appeal. *Fodge*, 121 Idaho at 195, 824 P.2d at 126. Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See Field*, 144 Idaho at 571, 165 P.3d at 285; *Haggard*, 94 Idaho at 251, 486 P.2d at 262. In *Perry*, 150 Idaho 209, 245 P.3d 961, the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates

6

one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

The Double Jeopardy Clause of the United States and Idaho Constitutions provides that no person shall be twice put in jeopardy for the same offense. The Double Jeopardy Clause of the United States and Idaho Constitutions affords a defendant three basic protections. It protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple criminal punishments for the same offense. *Schiro v. Farley,* 510 U.S. 222, 229 (1994); *State v. McKeeth*, 136 Idaho 619, 624, 38 P.3d 1275, 1280 (Ct. App. 2001). Whether a defendant's prosecution complies with the constitutional protection against being placed twice in jeopardy is a question of law over which we exercise free review. *State v. Santana*, 135 Idaho 58, 63, 14 P.3d 378, 383 (Ct. App. 2000).

There are two theories under which a particular offense may be determined to be a lesser included offense of a charged offense. *State v. Flegel*, 151 Idaho 525, 527, 261 P.3d 519, 521 (2011). The first theory is referred to as the statutory theory. *Id*. We apply the test which originated in *Blockburger v. United States*, 284 U.S. 299 (1932) to determine whether an offense is a lesser included offense under the statutory theory. The *Blockburger* test provides that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there have been two offenses or only one for double jeopardy purposes is whether each statutory provision requires proof of an additional fact which the other does not. *Id.* at 304. If two offenses have been determined to be one offense under the *Blockburger* test, then convicting and punishing a defendant for both offenses is a violation of the Double Jeopardy Clause. *Brown v. Ohio*, 432 U.S. 161, 168-69 (1977).

Applying the *Blockburger* test in this case, we conclude that possession of a controlled substance, pseudoephedrine, with intent to manufacture methamphetamine and trafficking in methamphetamine by manufacture constitute two separate offenses because each crime requires proof of at least one element that the other does not. Possession of a controlled substance with intent to manufacture methamphetamine requires, among other elements, that a person possess a schedule I or II controlled substance--in this case pseudoephedrine. I.C. § 37-2732(a)(1)(A). Trafficking in methamphetamine by manufacture does not contain this element. *See* I.C. § 37-2732B(a)(3). Trafficking in methamphetamine by manufacture requires, among other elements,

that a person knowingly manufacture methamphetamine. I.C. § 37-2732B(a)(3). Possession of a controlled substance, pseudoephedrine, with intent to manufacture methamphetamine does not contain this element. *See* I.C. § 37-2732(a)(1)(A). Thus, the crimes of possession of a controlled substance, pseudoephedrine, with intent to manufacture methamphetamine and trafficking in methamphetamine by manufacture constitute two separate offenses under the *Blockburger* test because each contains an element that the other does not. Therefore, Klundt has failed to demonstrate that he was subjected to double jeopardy under the statutory theory.

The second double jeopardy theory is called the pleading theory. *Flegel*, 151 Idaho at 529, 261 P.3d at 523. This theory holds that an offense is an included offense if it is alleged in the information as a means or element of the commission of the greater offense. *Id.*; *see also State v. Thompson*, 101 Idaho 430, 435, 614 P.3d 970, 975 (1980); *State v. McCormick*, 100 Idaho 111, 115, 594 P.2d 149, 153 (1979); *State v. Hall*, 88 Idaho 117, 123, 397 P.2d 261, 263-64 (1964); *State v. Anderson*, 82 Idaho 293, 301, 352 P.2d 972, 977 (1960). For example, in *State v. Corbus*, 151 Idaho 368, 375, 256 P.3d 776, 783 (Ct. App. 2011), this Court applied the pleading theory and concluded that the language of the information charging Corbus revealed that reckless driving was charged as the means of committing the crime of eluding a police officer. Specifically, we explained that, with respect to the charge of eluding a police officer, the information stated:

> [Corbus] willfully attempted to elude a pursuing police vehicle after being given a visual signal to stop, and in so doing . . . traveled . . . in excess of 100 m.p.h. [or] . . . drove his vehicle in a manner as to endanger or be likely to endanger the property of another or the person of another, to-wit: the Defendant drove in a reckless manner including speeding in excess of 100 m.p.h., passing other vehicles, and turning off his headlights after sunset . . . .

*Id.* With respect to the reckless driving charge, the information stated:

> [Corbus drove] carelessly and heedlessly; without due caution and circumspection and/or at a speed or in a manner to be likely to endanger persons or property; by driving in excess of 100 m.p.h. with his headlights turned off after 9:18 p.m., with other vehicles on the roadway . . . .

*Id.* We reasoned that, because the eluding charge stated that Corbus "drove in a reckless manner" in his attempt to elude a police officer, and because the language used in both charges laid out the same factual circumstances as the basis for each, the means by which Corbus eluded a police officer were the same means by which Corbus drove recklessly. *Id.* As such, this Court

8

concluded that, under the pleading theory, reckless driving was a lesser included offense of eluding a police officer and Corbus's conviction and punishment for both offenses was in violation of the Double Jeopardy Clause of the Idaho Constitution. *Id.*

Thus, in applying the pleading theory here, we must examine the information with which Klundt was charged to determine whether possession of a controlled substance, pseudoephedrine, with intent to manufacture methamphetamine, was a lesser included offense of trafficking in methamphetamine by manufacture. The information charging Klundt with trafficking in methamphetamine by manufacture stated that Klundt, "on or between January, 2009, and September, 2009, in the County of Kootenai, State of Idaho, did knowingly manufacture methamphetamine, or did aid and abet in the commission of said offense." The information charging Klundt with possession of a controlled substance, pseudoephedrine, with intent to manufacture methamphetamine stated that Klundt, "on or between January, 2009 and April, 2009, in the County of Kootenai, State of Idaho, did knowingly and unlawfully possess a controlled substance, to-wit: pseudoephedrine, a Schedule II controlled substance, with the intent to manufacture methamphetamine."

Unlike the language of the information in *Corbus*, the language of the information here reveals that possession of a controlled substance, pseudoephedrine, with intent to manufacture methamphetamine was not charged as the means by which Klundt committed the crime of trafficking in methamphetamine by manufacture. We reiterate that, in *Corbus*, the reckless driving act that was alleged in the information as the means by which Corbus eluded a police officer was the same act by which Corbus committed the crime of reckless driving. Thus, reckless driving was a lesser included offense of eluding a police officer.

Here, the jury instructions identified several acts by which Klundt and Barnes allegedly obtained pseudoephedrine. While the language of the information with respect to both charges reveals similar time periods during which Klundt allegedly committed the offenses, there is no allegation that the act or acts by which Klundt trafficked in methamphetamine by manufacture were the same act or acts by which Klundt committed the crime of possession of a controlled substance, pseudoephedrine, with intent to manufacture methamphetamine. Additionally, as charged, the jury could have found Klundt guilty of trafficking in methamphetamine by manufacture because he aided and abetted Barnes in the commission of that offense, which would not have required Klundt to actually possess a controlled substance, pseudoephedrine,

with intent to manufacture methamphetamine. Under the pleading theory, therefore, possession of a controlled substance, pseudoephedrine, with intent to manufacture methamphetamine is not a lesser included offense of trafficking in methamphetamine by manufacture. As such, Klundt has failed to demonstrate that he was subjected to double jeopardy under the pleading theory.

Accordingly, Klundt's claim fails under the first prong of *Perry* because Klundt has not demonstrated that he was subjected to multiple convictions and punishments in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution or Article 1, Section 13 of the Idaho Constitution. Having demonstrated no violation of an unwaived constitutional right, Klundt's claim fails under the first prong of *Perry*.

## III.

## CONCLUSION

We hold that there was not a variance between the information charging Klundt with conspiracy to traffic in methamphetamine by manufacture and the elements of the jury instruction given at trial and that, even if there was a variance, the error was harmless. Klundt has not demonstrated that his right to be free from multiple convictions and punishments under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution or Article 1, Section 13 of the Idaho Constitution was violated. Accordingly, Klundt's judgments of conviction for conspiracy to traffic in methamphetamine by manufacture; trafficking in methamphetamine by manufacture; and possession of a controlled substance, pseudoephedrine, with intent to manufacture methamphetamine, are affirmed.

Chief Judge GRATTON and Judge GUTIERREZ, **CONCUR.**